UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| IN RE: | TAD FRANKS | No.: 1:09-bk-10235 |
| | Debtor | |
| | DAWN FRANKS | |
| | Joint Debtor | |

| | | |
|---|---|---|
| TAD FRANKS AND | : | |
| DAWN FRANKS | : | |
| VS. | : | AP NO.: 1:09-ap-01121 |
| FLAGSTAR BANK, FSB, | : | |
| MORTGAGE ELECTRONIC | : | |
| REGISTRATION SYSTEMS AND | : | |
| JOHN DOE, ALIAS | : | |

MEMORANDUM OF LAW

Plaintiffs are before the Court on an Emergency Motion seeking a Temporary Restraining Order against the defendants foreclosing on their property on January 7, 2010.  The plaintiffs are in the midst of a Chapter 13 Bankruptcy proceeding with a confirmed Plan.  They are current on their Plan payments, but unfortunately due to financial difficulties and the loss of employment by Dawn Franks, they fell behind on their mortgage.  Debtors have tried for a loan modification having filed a request on October 28, 2009  However they have only been offered the option of a short sale for thei home and thus have to come to Court to seek relief in the form of a Temporary

Restraining Order and preliminary injunction in conjunction with their recently filed TILA case.

A review of the Motion filed by the Plaintiffs and the supporting documents indicates that they are entitled to rescind their loan more than three days after the closing, due to the failure to include certain overcharges as finance charges in the Truth in Lending Disclosure Statement. These charges were incurred by the settlement agent, Cobalt Settlement Service, LLC which was a subsidiary of the mortgage broker, Sher Financial Group (Exhibit E) which obtained the Plaintiffs their loan from Defendant Flagstar Bank, FSB. A review of the documents and exhibits, most particularly the affidavit (Exhibit A) of Attorney Joseph C. Manera, a Rhode Island Title attorney, will demonstrate to the Court that Plaintiffs have a right to rescind due to the failure to include certain overstated charges as finance charges in the Truth in Lending Disclosure statement. As a result, they have demonstrated a prima facie case for application of the remedies of the Truth in Lending Act, 15 USC 1601 et seq.

This statute, which is a remedial statute, allows the Federal Reserve Board to promulgate regulations to interpret this Statute. This is codified as Regulation Z at 12 CFR 226 et seq. and includes several provisions applicable to this case. Title charges and similar charges are exempted from

2

the requirement of being included in the Truth in Lending Disclosures so long as they are bona fide and reasonable as stated in 12 CFR 226.4:

7) *Real-estate related fees.* The following fees in a transaction secured by real property or in a residential mortgage transaction, if the fees are bona fide and reasonable in amount:

(i)  Fees for title examination, abstract of title, title insurance, property survey, and similar purposes.

However in this case, Attorney Joseph C. Manera has pointed out in his affidavit that there was a duplicate charge for at least $275.00, which was not a bona fide charge.  His affidavit indicated that Line 1102 and Line 1103 of the settlement statement were duplicate charges for title search and title examination.  In addition, the settlement agent, which was a wholly owned subsidiary of the mortgage broker also charged for a phantom fee, designated as Title Binder Fee.  Attorney Manera pointed out in his affidavit that there was no such fee as a title binder fee payable to Stewart Title.  Thus this junk fee should have been included in the truth in Lending Disclosure as part of the finance charge.

     The settlement agent also erroneously listed the recording charge for the discharge of the mortgage as $150.00 when the fee at the most is $49.00 pursuant to Rhode Island General Laws 34-13-7.  This also amounted to a mark up from the actual recording cost which should have been included in

3

the finance charge. Similarly the recording charge for the mortgage was also overstated by $20.00 as well. 15 USC 1605(d)(1) exempts from the calculation of the Truth in Lending Disclosure:

Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.

However , the overcharge for the recording thus should have been included as finance charges in the Truth in Lending Disclosure Statement.

A review of 15 USC 1635(i) makes it clear that in the foreclosure context, the Debtors are entitled to seek rescission of their mortgage. This portion of TILA provides:

**(i) Rescission rights in foreclosure**
**(1) In general**
Notwithstanding section 1649 of this title, and subject to the time period provided in subsection (f) of this section, in addition to any other right of rescission available under this section for a transaction, after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling of an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section, if—
**(A)** a mortgage broker fee is not included in the finance charge in accordance with the laws and regulations in effect at the time the consumer credit transaction was consummated; or
**(B)** the form of notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the Board or a comparable written notice, and otherwise complied with all the requirements of this section regarding notice.
**(2) Tolerance for disclosures**
Notwithstanding section 1605 (f) of this title, and subject to the time period provided in subsection (f) of this section, for the purposes of exercising any rescission rights after the initiation of any judicial or nonjudicial foreclosure

4

process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $35 or is greater than the amount required to be disclosed under this subchapter.

This section was the subject of 12 CFR 226.23(h), which provides:

(h) *Special rules for foreclosures.*--(1) *Right to rescind.* After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the consumer shall have the right to rescind the transaction if:

(i) A mortgage broker fee that should have been included in the finance charge was not included; or

(ii) The creditor did not provide the properly completed appropriate model form in appendix H of this part, or a substantially similar notice of rescission.

(2) *Tolerance for disclosures.* After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:

(i) is understated by no more than $35; or

(ii) is greater than the amount required to be disclosed.

Thus, due to the foreclosure situation now facing the Debtors, they have the right to raise the defense of rescission in this adversary proceeding because the overcharges, which should have been disclosed as finance charges were clearly greater than $35.00.

Plaintiffs seek to retain their home and make affordable mortgage payments. For this reason they have filed a Loss Mitigation request in this Court. They were merely advised to speak with the loss mitigation department of Flagstar Bank, FSB, which has not provided them any relief. However, with this right to rescission statutorily available to them, they do have a reasonable basis to suggest that a loan modification may be the proper type of tender in the Chapter 13 format. In the Massachusetts Bankruptcy Court case of <u>In re: Jaaskelainen</u>, 391 B.R. 627 (Bank Mass, 2008), Judge Hillman granted a rescission claim and did not require any tender from the homeowner in the context of a bankruptcy case. The Court in that case did not require a debtor to be required to tender proceeds as a condition of rescission:

E. Tender Obligation

Upon the valid exercise of the right of rescission, the security interest becomes void and borrower is not liable for finance or any other charges or interest.(fn115) Within twenty calendar days of the receipt of the NOR, the creditor shall return all money or property given in connection with the transaction and take any necessary action to terminate its security interest.(fn116) Once this occurs, the borrower must tender the money or property loaned back to the creditor.(fn117)

I previously held that rescission by an obligor is not conditioned by tender or payment in the context of a bankruptcy case.(fn118) In *Myers,* I relied on the following passage by Judge Deitz explaining the difference

6

between cases where the obligor is subject to a bankruptcy proceeding and those where the obligor is not:

In a non-bankruptcy setting, the rights and duties of the parties upon TIL[A] rescission are clear and absolute. Each party must make the other as whole as he would have been had the contract never been entered into. In the absence of bankruptcy, there is no legal impediment to either party doing what is required to restore the status quo ante. Consequently, the creditor's statutory duty to perform first merely establishes the order of performance; it does not alter the ultimate effect on the remedy.
Bankruptcy, however, relieves the debtor from his obligation to pay the creditor upon rescission. Conditioning rescission upon the debtor's payment therefore imposes an obligation from which the debtor has been legally freed. Unlike the situation absent bankruptcy, there is a legitimate, legal impediment to the debtor's reciprocal performance. It would

**646**

be palpably unfair to deny the relief to which a consumer is entitled under TIL[A] because that consumer has also availed himself of bankruptcy relief. To do so would require that the consumer choose between bankruptcy and TIL[A], something neither form of statutory relief contemplates.(fn119)

Essentially, when a borrower rescinds a transaction and the security interest is terminated as a matter of law, the creditor is left with an unsecured debt. Outside a bankruptcy proceeding, this characterization is of little consequence because unsecured debts must otherwise be paid in full, failing which, a creditor may take steps to reacquire a security interest. In a bankruptcy proceeding, however, unsecured debts are paid pro rata and may be discharged without payment. Requiring a Chapter 13 Debtor to tender the full amount of the loan on a creditor's now unsecured claim would unfairly discriminate among unsecured claims in violation of 11 U.S.C. § 1322(a)(3).

Plaintiffs recognize that one United States District Court

overruled Judge Hillman in <u>Jaaskelainen</u> citing equitable considerations.

However, Plaintiffs suggest that the lack of tender in Chapter 13 cases is

appropriate as the Plan payments would obviously increase if the Debtors

7

were able to own a formerly secured property without a mortgage payment. This Court has previously allowed rescission without tender in the case <u>of In re: Rodrigues</u> (Bank. RI, 2002). Other jurisdictions have looked at the issue of tender and decided that elimination of the tender requirement is consistent with Bankruptcy law. However if the Court imposed an equitable requirement of tender by some kind of loan modification as a condition of rescission, the Plaintiffs would accept the Court's position on that issue. The statute seems to leave it to the discretion of the Bankruptcy Court to consider equitable principles when reviewing tender requirements, if any, after rescission.  Plaintiffs have cited these statutes, regulations and cases in order to demonstrate that they have a high probability of success on the merits in this case.  Given the affidavit of Attorney Manera and a review of the documents, it is argued that this Court should grant the Temporary Restraining Order against the foreclosure.  Plaintiffs have sought Loss Mitigation to stop the foreclosure with an objection from the loan servicer. Without either Loss Mitigation or a Temporary Restraining Order, the Plaintiffs will lose their home.  While it may have a value less than the amount of the mortgage, it is their home.  In some cases, parties come before the Court seeking relief based on a request for the application of equitable principles.  Here the Plaintiffs seek the equitable power of the Court, but are

8

also come armed with arguments based on law as well.  For these reasons, the Motion for a Temporary Restraining Order cancelling the foreclosure sale should be granted.

                                                                    Respectfully Submitted,

December 30, 2009

                                                                    /s/John B. Ennis
John B. Ennis, Esq. # 2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230 – office
(401) 946-5006 – fax
jbelaw@aol.com